Good morning, Owners. May it please the Court, I'm Peter Perez, counsel for the Defendant Appellant, Duane Calvo. In this case, Your Honor, we have raised numerous issues on appeal regarding sentencing errors which occurred. We've raised nine issues and 16 sub-issues, any and all of which we ask the Court to use as basis to reverse the judgment and remand the case for resentencing. Your Honor, we allege that Rule 11, Rule 32, and Rule 43 had been violated. We allege that the Fifth, Sixth, and Fourteenth constitutional rights of the defendant have been violated, and that the Court misapplied sentencing guidelines 1B1.1, 2D1.1, 3E1.1, and 5K1.1. The errors began, Your Honor, when at the change of plea hearing, the magistrate judge failed to advise the defendant that he – that the government had the duty to prove beyond a reasonable doubt drug quantity, and also that at sentencing, that he was entitled to a jury determination regarding drug quantity. Accordingly, there was a Rule 11 violation during the plea colloquy. What this affects, Your Honor, is, number one, the nature and circumstances of the offense. It affects also the guideline calculation, and it also affects the defendant's rights insofar as it is unclear whether or not he entered into a voluntary plea agreement, whether he would have entered into the plea agreement had he known that the government had a duty to prove drug quantity beyond a reasonable doubt. Secondly, Your Honor, at the sentencing hearing, the government did not prove drug quantity above 50 grams beyond a reasonable doubt. In fact, the district court noted that it had concerns about the drug quantity that the government deserted of 2 kilograms because there was no actual drug quantity involved, that we were dealing with look-alike methamphetamine, that the drug quantity originated with the government, with law enforcement, that we had an unconsummated transaction, that the defendant did not have the money to even pay for the purported substance. So at the sentencing hearing, the Defendant's Counsel did dispute drug quantity. The Court, without holding the government  having not presented any evidence whatsoever regarding drug quantity, the Court found that even though there was a dispute regarding drug quantity, that there was a 2-kilogram drug quantity that should be attributed to the defendant. Consequently, the Court applied a level 38 base offense level, and we assert that the Court erred in doing so. Additionally, Your Honor, we argue that the Court erred in its application of the guidelines in determining the offense level. What we assert should have happened was that the Court should have determined that there was a 50-gram amount that should have been attributable to the defendant because the defendant pled guilty to 21 U.S.C. 841. The threshold for that was 50 grams. That could be attributed to him without dispute. However, any amount beyond that could not be attributed to him without reliable evidence being presented for those amounts by the government. And again, the government did not present any evidence in this case regarding drug quantity. So in applying the sentencing guidelines, the Court should have started by applying 1B1.1, which requires that the guidelines be applied in the order in which they appear. The Court then would have gone to 2D1.1 to determine what the appropriate offense level was based upon quantity. In this case, 50 grams would have been the undisputed quantity, 2 kilograms was the disputed amount, 2 kilograms was the amount that was not proven by the government. From that, the Court should have subtracted three points for acceptance of responsibility. And then from that, not apply Chapter 4, which the Court did, which the Court made reference to on the record. Then go to Chapter 5, applying 5G, going to the mandatory minimum, and then applying any departures that the Court deemed appropriate. The Court then the government, rather the Court then erred by misapplying Section 5K1.1 regarding the downward departure. In this case, the Court erred in four instances. One, because the Court did not even address 5K1.1, did not even mention the guideline when it was imposing sentence, and it failed to consider the 5K1.1 factors. And I'm not saying that the Court had an obligation to recite, wrote each one of those factors, but the Court does have an obligation to apply the sentencing guideline in imposing sentence. What the Court in this case did was said that departures were largely beside the point. The Court also said that it would rather than treat the defendant's cooperation as a downward departure to instead consider it under 18 U.S.C. 3553, which in and of itself requires a 5K1.1 analysis, which the Court didn't take, and to not deviate from the recommendation that was made by the government. The Court erred because the Court is obligated to apply the guideline when the motion is made, and the Court in this case dismissed the guideline in its entirety. In addition, the Court failed to undertake an individualized case-by-case consideration of this defendant's. Kennedy. Pardon me, counsel. I'm reading here a memo that tells me that Mr. Calvo was stipulated to the amount of 2 kilos. Well, Your Honor, what happened at the change of plea hearing was there was an exchange, and his the Federal public defender who was representing him at the time gave a series of facts that he was willing to stipulate to. And then the government added, well, Your Honor. That was not the same public defender who later is claimed to have a conflict. So at the time of the change of plea hearing, when the stipulation about the 2 kilos was entered into, that counsel was not conflicted, true? Correct. So why is he stuck with that stipulation? Because what the government said was, during the change of plea hearing, what the government said was, well, the stipulation must include 2 kilos, but it doesn't say 2 kilos of what. What we start with is the indictment, and the indictment says approximately 2 kilos of methamphetamine. It doesn't say ice. When he goes to the change of plea hearing, when the government says he has to agree to a quantity of 2 kilos, 2 kilos of what? 2 kilos of ice, 2 kilos of methamphetamine, 2 kilos as a net weight, 2 kilos as a gross weight. It's just. No, no. But pardon me. He then proceeded to that hotel where he attempted to purchase the ice, which he had the intent to distribute. Then the government says the stipulation must include the fact that the quantity was 2 kilos. In context, that means ice, right? But, Your Honor. The court responded yes, and the counsel said that's fine, Your Honor. The problem that I have with that purported stipulation is that 2 kilos as a net weight, as a gross weight. If it's as a gross weight, then we can go all the way down. It could be 1 gram of methamphetamine, 1 gram of ice, and 1.9 grams, 1.9 kilos of mixture. And under those circumstances, he wouldn't even have qualified. He wouldn't even have met the threshold under 21 U.S.C. 841 for the 50 grams. So that's why I have problems with accepting that he's. Isn't ice another word for methamphetamine? It is, but it's a methamphetamine that's of a particular purity. And I think the purity is 87 percent, if I'm not mistaken. But it has to be of a certain purity in order to qualify as ice. If it's not ice, then it could be a mixture of methamphetamine. And then when we talk about how much actual ice is attributable. It was 87 percent. Pardon me. If it was ice and it was 87 percent methamphetamine and there was a stipulation to 2 kilos, that would be 1.76 kilos of methamphetamine. True? It would be if it was 87 percent pure. Times 2 kilos equals. Right. Then you would then it wouldn't be 2 kilos. It would be less than 2 kilos. It would be less than 2 kilos. Correct. Yeah. So I just respectfully can't accept that there was a stipulation that that established 2 kilograms. And because we've got the indictment which talks about approximately 2 kilograms, we've got the change of plea exchange which talks about 2 kilos. But again, it's vague. But then the sentencing guideline where the minimum sentence invoked by 2 kilos is used would be ungrounded in the record. Well, Your Honor, the mandatory minimum sentence is triggered by the 50 grams, not by the 2 kilos. But when we apply 2 kilograms, he ends up at a higher sentencing base offense level. And in this case, even though that offense level had been disputed and even though the drug quantity had been disputed, the court determined ultimately, you know, the court said it would consider the arguments of counsel, but the court ultimately said, well, there's no dispute regarding the pre-sentence report and I'm going to adopt it as true. I'm going to apply a level 38 base offense level, and then I'm going to go minus 3 for acceptance of responsibility. But then I go back up to the 240 months as the mandatory statutory minimum, and then I'm going to make these departures. But when the court – actually, the court didn't say it was making departures because the court said departures were beside the point. But when the court comes to a base – starts at a base offense level at 38, then when it ultimately decides to give cooperation credit, the court has in its mind, I think, that we're dealing with somebody who's at a level 38, which is 235, I think, to 300-something months, versus if the court had applied the guidelines in the order that they're required and appropriately, then we end up, in my calculation, at a level 29, because you attribute 50 grams to him, that's a level 32, minus 3 for acceptance of responsibility, that ends up at 97 to 107 months, I think, under category 2, and the court – when the court determines what the appropriate sentence would be for somebody who's cooperated and whether or not in applying the – Kennedy. Didn't he also have a prior conviction? He did, and that's why we had a 20-year mandatory minimum that we were dealing with, but once the court granted the government's motion for 5K1.1, even though it didn't reference 5K1.1, and even though it said departures were largely beside the point, the court had the discretion then to go below the mandatory minimum and apply whatever sentence it deemed appropriate. When the court is under the misapprehension that – what I assert is a misapprehension that the – that we're dealing with a level 38 defendant versus a level 29 defendant, then the court is probably going to be disinclined to depart downward – down to that level at the time that the court grants cooperation credit and is free to then impose a sentence below a statutory mandatory minimum. Going back to the 5K1.1 misapplication, I've argued that the court then failed to undertake an individualized case-by-case consideration of the extent and quality of Mr. Calvo's cooperation. Now, in this case, the amount of cooperation was disputed. Neither side presented evidence, only argument regarding cooperation. What the court did in this case, and I submit that this was inappropriate because sentencing policies and sentencing practices and failing to apply 5K1.1 and just generalizing and deferring are inappropriate in applying a 5K1.1 departure, is that the court said departures are largely beside the point, number one. Number two, the court said that it felt that it had to defer to the government on matters like this, that it did not want to second-guess DEA in the first instance and the government in the second instance, and that the court was ill-equipped to – to evaluate DEA's evaluation of the defendant's cooperation. Basically, what the court, I say, has to do is the court has to take an individualized examination of the value of the defendant's cooperation and cannot defer that – that consideration to the government or to DEA, which in this case it did with no evidence. And what compounds this, Your Honors, is that the government itself, as the record, I say shows, was not familiar with – was not completely familiar with the extent of the defendant's cooperation. When asked questions by the court, we have responses like, I don't know, or it very well could be, or this is the first I'm hearing about it. These are comments that are on the record that we've cited in our brief, that the government answers in response to the court's questions regarding cooperation. And in addition, the court, regarding problems that Mr. Calvo had with the DEA and his cooperation efforts, the court dismissed that, saying that based upon the court's anecdotal experience, that the DEA is going to pursue – pursue zealously any leads that a – that a cooperating defendant may have. Well, that – that simply was – was the court, I don't think, can do that. We had a visiting judge from another district evaluating agents in another district trying to apply anecdotal experience. And the – the sentencing counsel who represented Mr. Calvo made some good points regarding the difficulties that defendants have with DEA on Guam. And there really are problems there. You've got situations where DEA basically babysits that office and lacks the manpower to – to take defendants who enter into plea agreements or who make themselves available for cooperation to – to give them cooperation opportunities. It is a real problem. But the court, in failing to look at Mr. Calvo's case individually, violated the sentencing guidelines. It also violated, I believe, this Circuit's law, and I believe I've cited cases to that effect. In addition, the guidelines require, and also the cases require, that when you are looking at a 5K1.1 downward departure, you must do that independently over a Section 3E1.1 acceptance of responsibility adjustment. And in this case, the court subsumed and the government subsumed the two into one, and the court did not separately – the court subsumed the two, and that was improper. Finally, the court expressed that it lacked jurisdiction to depart downward under absent-of-government motion. And the fact is that that's not true, because this Circuit has stated that – that the court has the authority under certain circumstances to sua sponte, depart downward, when the government, for various reasons, does not. And when the court makes statements such as it did in this case, quote, the only dispensation that Calvo was entitled to is what the government offered, which is to say, well, make the motion to get you out from under the mandatory minimum, were it not for the motion on the part of the government, my hands would be tied, and the only sentence I could pronounce in this case would be the 20-year sentence. That's not correct, because the court had the authority to sua sponte, depart. The court also had the authority to depart under 5K2.0 for other reasons which might have been neglected by the sentencing guidelines. The guidelines require that it must be clear from the sentencing transcript that the district court knew it had the legal authority to depart downward under 5K1.1. In this case, again, the court didn't even apply 5K1.1, but the court, in addition, the court did have to, the court was required to at least demonstrate that it knew it had the authority to depart downward. In this case, it did not. We've also argued, Your Honors, that Mr. Calvo's sentence was imposed in violation of law since the district court failed to determine the nature and circumstances of the offense properly. In this case, what the court did was it adopted the pre-sentence report at the end as factually accurate, even though issues of dispute arose in the midst of the sentencing hearing regarding offense conduct, drug quantity, and ultimately what the court said was, you know, there's no dispute regarding the pre-sentence report. I'm going to adopt it as true, and then it applied its sentencing analysis. And this is not proper because, number one, there were disputes that were raised in the midst of the sentencing hearing. Number two, when a defendant does object to statements in the pre-sentence report, the burden is then on the government to produce reliable evidence to establish proffered facts. And in this case, and there is no presumption that factual statements in the pre-sentence report are accurate to the point where you then shift the burden of proof to the defendant to establish, to disprove them. In this case, what had happened was disputes were alleged. The government offered not one shred of proof or evidence regarding any matter contained in the pre-sentence report, yet still the court determined there were no disputes, and the court adopted the pre-sentence report as true. That was in violation of law, and the court also failed to determine the nature and circumstances of the offense properly. The other issue, Your Honors, is that the district court erred in sentencing Mr. Calvo on the basis of materially false or unreliable information. When this happens and it's made, and it's demonstrably made a basis for the court's sentence, then a remand is appropriate, a vacation of the sentence and a remand is appropriate. In this case, we cite four areas where the court relied upon unsubstantiated, unreliable, or false information. Number one was Mr. Calvo's alleged history with the confidential informant. Now, Your Honors, again, there was no evidence whatsoever presented to the court at the sentencing hearing regarding any alleged history with the confidential informant. The defendant made admissions at the plea hearing regarding what he admitted to, but beyond that, any additional facts that the government alleges in order to enhance sentence, those would have to be proved through evidence. And these – there was no evidence presented regarding purported history where kilos of ice were allegedly moved between these two individuals in the past. In fact, what the government admitted at the sentencing hearing was that the confidential informant failed to keep accurate drug records, that the confidential informant didn't have pay-and-owe sheets. So there was no evidence for that regarding the government's representations concerning the purity of ice on Guam and the percentage of addicts on Guam. The government said that ice on Guam is 97 to 100 percent pure, that it's instantly addicted – addicting, and that 50 percent of the population is addicted to it. I've lived on Guam for many years, and 50 percent of the population, I can tell you, is not addicted to ice. One in two people is not. And your time is running out. Let me ask you one clarification question. Where – what – what – could you clarify whether he has or has not completed the drug rehab program? Does he contend that he has, and does he contend that he has not? I'm a little confused on this question. Based upon my discussions with he and his father, he has not. He has not? Correct. And I was also told that he indicated this to sentencing counsel, and sentencing counsel who did not submit PSR responses did not raise this either or object to it at the sentencing hearing, and that's one of the assignments of Eric. In a resentencing, he would be prepared to produce whatever evidence is appropriate to show that he has not done this? Yes. If Your Honor's grant a remand, then what we're going to do is we're going to present evidence regarding his cooperation. We're going to dispute drug quantity, and we're going to dispute any other facts that the government attempts to allege that will enhance his sentence. And we will file pre-sentence report responses. My time is over, and thank you. Let's hear from the government. Okay. May it please the Court and Counsel, Karen Johnson for the United States. The indictment charges approximately 2 kilos net weight of methamphetamine hydrochloride. The defendant advised the Court that he was going to come in and plead guilty to the charge without benefit of a plea agreement, and that is exactly what he did. There was no plea agreement to cooperate with the government. There was no plea agreement for any other factors. He came in, and he pled straight up to 2 kilos. And that's why, in subsequent hearings, the government did not attempt to prove the amount because he had already pled guilty to that amount before Judge Manabusen. If this is anything, it is a motion to vacate the conviction. In essence, this is Mr. Calvo's third attorney. What he wants to do is take another bite at the apple and hope for a sentencing and a better sentencing before another judge. If, in fact, there was a Rule 11 violation, the remedy is not resentencing. The remedy is to vacate the conviction, send it back for him to enter a plea of not guilty, and we go to trial. And that is what, if the Court finds there's a Rule 11 violation, should be done. In terms of the various errors that counsel ledges in sentencing, the government's position is that none of these the sentencing was not imposed in violation of law. The Court adequately covered all of the factors that are required under 3553, and that, in fact, there is no jurisdiction for this Court to hear an appeal of the sentence because everything was handled in an appropriate manner below. For example, counsel says that there were guidelines weren't followed. The defendant was looking at a mandatory minimum because he had a prior conviction of 240 months based on what he had pled guilty to, and that is more than 50 grams. What do you do with the argument that Mr. Vandeveld's representation was a conflict? It is irrelevant. Because? Because the defendant pled guilty to possession with intent to distribute 2 kilos of ice. The Court, sua sponte, raised whether it was fair to base a sentence on 2 kilos of ice. And we got into, and that's what brought in the conflict. I think when Mr. Vandeveld walked into court, as I, he was expecting a sentence on 2 kilos of ice. The Court said, well, is that really fair? In essence, when the government does these reverse things, we, in effect, are setting the sentence by the amount that the defendant moves, agrees to move. That is only then that we got into whether or not it was fair. And the answer was, yes, it was fair, because this man was Kimme Dang's main distributor. You don't deny that there was a conflict? Oh, yes. I was shocked. I didn't prosecute Ms. Dang. I did not know that Mr. Vandeveld had represented her. And at that point, I'm thinking, you know, this is not good. We need to get defendant to another counsel. But the Court, I think, dealt with that by eliminating any question about whether the 2 kilos was fair and, in effect, saying, does everyone agree that he routinely moved more than half a kilo? And the answer was yes. But didn't ñ wasn't one of the issues the claim of sentence entrapment that Calvo had bought very small quantities before, and didn't Dang testify to greater quantities so that there wasn't sentence entrapment? Well, the defense did not raise an issue of sentence entrapment. The Court did. And when the Court raised that issue, we advised him that we could call Ms. Dang and that he was her main distributor and that he was moving more than half a kilo routinely. She said the amount that she gave him, the greatest amount at one time was 1.5 kilos. And who is ñ It was in her interest ñ pardon me, Judge. Please go ahead. It was in her interest to testify favorably to the DEA because she was a confidential informant. So ñ and Vandeveld was representing Calvo at the time. And it was in his interest to have her be well considered by the government, and at the same time to save Calvo. So admitting that there was a conflict of interest, aren't we in the situation where that conflict of interest effectively removed assistance of counsel from Calvo at the sentencing hearing? If there had not been an agreement as to how much Mr. Calvo, in fact, was moving for Kimmy Dang, obviously you would have a conflict that could not be waived. And you'd have to have different counsel. But that agreement doesn't take care of the sentence entrapment issue, does it? Well, yes, it does. Because the Court, rather than hassle over whether he was ñ it was an entrapment to move 2 kilos or to propose that he move 2 kilos, the Court asked whether there was any dispute by any of the parties that at any one time he was moving more than 50 grams, which is what you need for the mandatory minimum of 20 years to kick in. And there was no dispute by either party that, in fact, he was routinely moving more than 50 grams for Kimmy Dang. And so because there was no dispute about that, if Ms. Dang had been called, she could testify to that, but no one's disputing the fact that that was true. And so because of that, I think the Court obviated that conflict. You know, this one just smells so bad to me. Sometimes you can't tell exactly what a conflict will produce. And to have someone representing simultaneously the criminal defendant and without revealing the conflict, representing his supplier who has clearly adverse interests, I mean, I don't know how we can be a part of that. Well, I agree with you. Would you object to just remand for resentencing? Don't reopen. Just remand for resentencing with a non-conflicted defense lawyer. Well, if this was the only issue, then the Court found that there was a conflict that could not be cleared. Well, if that were what we did, that would be the only issue. Well, in that case, remand for resentencing. When Mr. Vanderbilt announced that, there were several other spectators sitting in the Court, and I could hear the stir behind me. People were astonished. What's Mr. Vanderbilt doing now? I hope he's not representing criminal defendants. Oh, yes, he is. Oh, my goodness. But in his favor, because I know Curtis, and he's generally a good lawyer, I think he was taken by surprise because we both walked into the hearing expecting no one to contest the two kilos. And when the judge raised it, in effect, the judge created a conflict that I don't think Curtis had seen because the defendant had pled guilty to two kilos. So I don't think Curtis appreciated that there was a conflict or there might even be one, and there wasn't one. Obviously, the judge wanted something more than just a stipulation in order to decide the sentence because he asked for a hearing. And talk about that issue. I think unquestionably, the judge wanted to ensure himself that Mr. Calvo, in fact, was a major dealer as opposed to someone doing 5 and 10-gram quantities. And that's why he asked what the mandatory minimum started at. The answer is 50 grams or more than 50 grams. But that's when the conflict arose, right, at that point. Well, the reason I didn't insist we stop the proceeding is that I didn't – I thought that the conflict had been solved. And this sense is that – Solved how? Solved in the sense – in the fact that there was no dispute by either side that he was moving more than 50 grams at a time for Kimme Dang. When you say no dispute by either side, no dispute by Mr. Vanderbilt for his client, right? Yes. That's the problem. I can't help that. As I say, it was – it created a stir in the observers in the court when they saw that. Well, if there were a lot of spectators here, it might create a stir here, too. It was surprising. But as I say, in Curtis's favor, he was not anticipating that when he walked in because of the 2-kilo stipulation. Okay. Further questions? No. Thank you very much. Thank you. The case is now submitted. United States v. Calvo, submitted for decision. That concludes our oral argument for this morning. We will reconvene tomorrow. Same place.
judges: Hug, W. Fletcher, Bea